**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                              |   |                      |
|------------------------------|---|----------------------|
| RICKIE WILLIAMS,             | ) |                      |
|                              | ) |                      |
| Plaintiff,                   | ) |                      |
|                              | ) |                      |
| v.                           | ) | No. 16-cv-0932 (KBJ) |
|                              | ) |                      |
| VERIZON WASHINGTON, D.C. INC.,| )|                      |
|                              | ) |                      |
| Defendant.                   | ) |                      |

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SANCTIONS

Defendant Verizon Washington, D.C., Inc. ("Verizon") asserts that, during the discovery phase of the instant litigation, Plaintiff Rickie Williams and his counsel Arinderjit Dhali produced evidence that "should have placed Plaintiff's counsel on notice that certain critical allegations in the Complaint are false" and "that the claims made in the Complaint are neither grounded in fact nor warranted under the law." (Def.'s Mot. for Sanctions Pursuant to Fed. R. Civ. P. 11 ("Def.'s Mot."), ECF No. 14, at 1, 2.)[1] Verizon filed the motion for sanctions that is before this Court at present; pursuant to Federal Rule of Civil Procedure 11, Verizon requests dismissal of Williams's lawsuit with prejudice and an award of attorneys' fees. (*See id.* at 1.) The crux of Verizon's argument is that these sanctions are warranted because Dhali "failed to conduct [a] reasonable inquiry into the facts" (Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 15, at 3), and also refused to withdraw Williams's claims or amend the complaint to reflect evidence that was brought to light during the discovery process

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

(*see id.* at 13 ("This case should never have been filed, but it certainly should have been withdrawn voluntarily months ago.")).

At a motion hearing held on February 28, 2017, this Court partially resolved Verizon's sanction motion. Specifically, the Court orally denied the motion insofar as Verizon sought outright dismissal of the complaint, but the Court took the motion under advisement insofar as it requested attorneys' fees. (*See* Feb. 28, 2017 Hr'g Tr. ("Hr'g Tr.").) In support of the latter request, and at the Court's direction, Verizon subsequently filed a petition for attorneys' fees, which itemizes the fees that Verizon incurred in connection with its motion for sanctions. (*See* Def.'s Pet. for Attorneys' Fees ("Def.'s Pet."), ECF No. 23, at 1.) As explained fully below, because Verizon has offered no evidence to suggest that Dhali conducted an inadequate pre-filing inquiry into the legal or factual basis for Plaintiff's claims, and because Rule 11 does not authorize the sanctioning of counsel for his post-filing refusal to amend or withdraw filings that are subsequently discredited (however ill-advised and inappropriate that refusal may be), this Court cannot conclude that Dhali's conduct violates the terms of Rule 11. Consequently, Verizon's motion for sanctions and petition for attorneys' fees must be **DENIED**.

## I. BACKGROUND

All that is required to explain the Court's conclusion in this case is a brief recitation of the factual allegations in Williams's original complaint (which was filed on April 13, 2016), and a description of the evidence that the parties subsequently uncovered during the discovery process.

### A. The Facts Alleged In Williams's Original Complaint

Rickie Williams began his employment as a Systems Technician at Verizon in 1979, and first applied for leave pursuant to the Family Medical Leave Act ("FMLA") in 2012. (*See* Compl., ECF No. 1-1, ¶¶ 5–7.) Williams's complaint alleges that Verizon violated the FMLA when it terminated him while he was on FMLA leave. (*See id.* at 3.)

The events leading up to Williams's termination occurred in or around the weekend of Friday, March 7, 2014. According to Williams's original complaint, he first experienced sinus and migraine problems on Thursday, March 6, 2014 (*see id.* ¶ 12), and later that same day, received a call from his sister informing him that his aunt had passed away in New Orleans (*see id.* ¶ 13). Williams told his sister that he was unsure whether he would be able to attend the funeral in light of his health issues. (*See id.* ¶ 14.) The next day (Friday, March 7, 2014), Williams continued to feel unwell, and at about 6:00 or 6:30 a.m., Williams called the Verizon FMLA telephone line to inform Verizon that he would not be coming into work that day. (*See id.* ¶ 15.) At the time he made this call, Williams intended to remain at home. (*See id.* ¶ 17.) But approximately two to three hours later (i.e., around 8:00 or 9:00 a.m.), Williams changed his mind and decided to travel to New Orleans to care for his grieving family, reserving an airline ticket to New Orleans at that point. (*See id.* ¶¶ 18–19.) The very next day, Saturday, March 8, 2014, Williams (who was then in New Orleans) again called the Verizon FMLA line and informed Verizon that he was not feeling well and would not be able to work on that date either. (*See id.* ¶ 21.)

Upon William's return to work the next week, Verizon conducted an investigation into Williams's two absences, and accused Williams of feigning his medical illnesses and misrepresenting his health status. (*See id.* ¶¶ 28–30.) Based on the results of this investigation, on May 9, 2014, Verizon terminated Williams. (*See id.* ¶ 33.) In his original two-count complaint, Williams contends that Verizon interfered with his FMLA rights (Count I) by denying his requests for FMLA leave on Friday, March 7, 2014, and Saturday, March 8, 2014, and further, that Verizon retaliated against him for seeking to exercise his FMLA rights (Count II) by accusing him of feigning his illness and subsequently terminating him. (*See id.* ¶¶ 34–46.)

**B.  Facts That Came To Light During Discovery**

During the course of discovery, Williams disclosed additional evidence that, according to Verizon, directly contravenes the allegations in Williams's original complaint. First, Verizon emphasizes that "[t]he entire thrust of the Complaint is that Williams made a last minute decision on the morning of [Friday] March 7, 2014 to attend his aunt's funeral in New Orleans after calling out sick for an FMLA-covered migraine[.]" (Def.'s Mem. at 3 (emphasis omitted).) However, Williams later produced to Verizon copies of his debit card records, which revealed that Williams had purchased a non-refundable airline ticket to New Orleans on March 5, 2014—*two days before* he called out sick. (*See id.* at 4.) In addition, Williams's non-refundable flight was scheduled to leave Washington, D.C. at 6:45 a.m. on March 7th and to return to Baltimore at 2:38 p.m. on March 10th. (*See id.*) According to Verizon, this evidence "demonstrates that as of March 5, 2014—a day before he claims to have come down with a migraine—[Williams] had no intention of working on March 7, 8 and 10, 2014."

4

(*Id.* at 5.)

Second, Verizon notes that Williams's own FMLA paperwork clearly indicates that Verizon in fact *approved* Williams's request for FMLA leave on March 7 and 8, 2014, and thereafter allowed Williams to return to work without incident on March 11, 2014. (*See id.* at 5, 7.) According to Verizon, a *prima facie* FMLA-interference claim requires proof that an employer did not provide FMLA entitlements to its employees, and as a result, Verizon says that the evidence indicating that the company in fact approved Williams's March 7th and 8th leave requests completely undermines Williams's interference theory. (*See id.* at 6–7.)

Shortly after this new evidence came to light, Verizon's counsel contacted Plaintiff's counsel to request that Williams withdraw or amend his complaint. (*See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. ("Def.'s Reply"), ECF No. 19, at 2.) In response to Verizon's request, Dhali purportedly replied, "No, I'm good" (Def.'s Mot. at 13 n.8), and thereafter allegedly called Verizon's sanction motion "nonsense" and warned Verizon that it "severely underestimate[s]" him and that he would "stake [his] reputation on this case." (Def.'s Reply at 2–3 (internal quotation marks omitted) (second alteration in original).) Dhali also allegedly took other retaliatory actions, including taking additional depositions that, in Verizon's view, have not advanced Plaintiff's case, and inventing entirely new facts and legal theories to support the post-filing developments. (*See id.* at 2.)

**C.     Procedural History**

On January 3, 2017, Verizon filed the instant motion for sanctions, seeking dismissal of Williams's complaint and an award of attorneys' fees. (*See* Def.'s Mot. at

5

1.)  This motion became ripe on February 7, 2017 (*see* Def.'s Mot.; Pl.'s Opp'n to Def.'s R. 11 Mot. for Sanctions ("Pl.'s Mot"), ECF No. 18; Def.'s Reply), and this Court held a hearing on the motion on February 28, 2017.

During the hearing, the Court orally denied Verizon's motion for sanctions insofar as it requested summary dismissal of the complaint.  (*See* Hr'g Tr.)  But the Court ordered Williams to file an amended complaint that reflected the altered factual and/or legal allegations raised during the motion hearing.  (*See id.*)  The Court also set a briefing schedule for Verizon's then-anticipated dispositive motion, and indicated that it would entertain any challenges to the sufficiency of Williams's amended complaint in the context of such a motion.[2]

At the close of the February motion hearing, the Court noted that it would take Verizon's alternative request for attorneys' fees under advisement, and it instructed Verizon to provide the Court with information regarding the fees it had incurred in connection with its motion for sanctions.  (*See id.*)  On March 17, 2017, Verizon filed a petition for fees itemizing its costs and reiterating its contention that Rule 11 sanctions should be imposed.  (*See* Def.'s Pet; Detail of Legal Fees, ECF No. 23-1, at 5–8.)  Defendant's petition/motion is contested, and is ripe for this Court's review.  (*See* Def.'s Pet.; Pl.'s Opp'n to Def.'s Mot. for Fees ("Pl's Opp'n to Def.'s Pet."), ECF No. 26; Def.'s Reply to Pl.'s Opp'n to Def.'s Pet. for Attorneys' Fees ("Def's Reply to Def.'s Pet."), ECF No. 29.)

---

[2] In accordance with this Court's directives, Williams has now filed an amended complaint (*see* Am. Compl., ECF No. 24), and Verizon has filed a Motion to Dismiss and/or Motion for Summary Judgment (*see* Def.'s Mot. to Dismiss and/or Mot. for Summ. J., ECF No. 28), which is currently ripe for this Court's review (*see* Pl.'s Opp'n to Verizon's Mot. to Dismiss and/or Mot. for Summ. J., ECF No. 30; Def.'s Reply in Supp. of its Mot. to Dismiss and/or Mot. for Summ. J., ECF No. 32).  The instant Memorandum Opinion and Order addresses only Verizon's request for sanctions and attorneys' fees.

6

## II. DISCUSSION

Federal Rule of Civil Procedure 11 mandates that whoever submits pleadings, written motions, and other papers to the district court—regardless of whether the individual is an attorney or an unrepresented party—must undertake to sign those documents. *See* Fed. R. Civ. P. 11(a). This signature constitutes a certification by the signer that, "to the best of the person's knowledge" based upon "*an inquiry reasonable under the circumstances*," the document being filed merits the attention of the court. *Id.* 11(b) (emphasis added). Notably, per Rule 11, the signatory specifically avers to the following about the filing:

> (1) [that] it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) [that] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) [that] the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Id.* 11(b)(1)–(4). Thus, Rule 11 plainly "requires that an attorney conduct a reasonable inquiry into the factual and legal basis for a claim before filing." *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (citation omitted). Whether an attorney's inquiry is reasonable "may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion or other paper; [or] whether the pleading, motion, or

7

other paper was based on a plausible view of the law[.]" Fed. R. Civ. P. 11 Advisory Committee's Notes to 1983 Amendment; *see also Carswell v. Air line Pilots Ass'n, Int'l*, 248 F.R.D. 325, 328 (D.D.C. 2008) (explaining that Rule 11, which "is aimed at curbing abuses of the judicial system," imposes an objective standard of reasonableness on counsel and represented parties who sign papers or pleadings (internal quotation marks and citations omitted)).

Notably, "Rule 11's emphasis on the need to perform a 'reasonable inquiry' before 'sign[ing]' a 'pleading, motion, or other paper' [also] suggests that the rule authorizes sanctioning an attorney only for unreasonably *filing* such a submission, not for *failing to withdraw* or *to amend* the submission when *postfiling* contingencies reveal it to be unfounded." *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 44 (D.C. Cir. 1990) (emphasis and alterations in original) (quoting Fed. R. Civ. P. 11). In other words, Rule 11 sanctions attach only on the basis of an inadequate pre-filing investigation, and for this reason, at least five circuits "have held that Rule 11 does *not* impose a general obligation to discontinue a suit once the factual or legal allegations in the complaint have been discredited." *Id.* (emphasis in original); *see also id.* at 44 n.6 (collecting cases). Of course, "[a]s a practical matter[,] Rule 11 requires lawyers to [continue to] evaluate their case in light of new developments because they are forever filing papers, all of which must be adequately investigated and supported." *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990). But in order for the court to exercise its sanction powers appropriately, the party seeking sanctions must "specifically . . . articulate *which* submissions are defective and *why*[,]" *Hilton*, 899 F.2d at 45 (emphasis in original), and must also demonstrate that the identified deficiencies in the particular filings were or

could have been known to the signer at the time that the document was signed and filed, *see Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874–75 (5th Cir. 1988) (en banc).

In the instant case, Verizon seeks Rule 11 sanctions based on the purported lack of evidentiary support for Williams's original complaint, which, Verizon contends, should have been evident to Dhali both prior to and shortly after the filing of the complaint. (*See* Def.'s Mem. at 1 (arguing that this case "was baseless when filed and the lack of evidentiary support, if not obvious when filed, should be patently obvious now").) As to the pre-filing period, it is true that an attorney may be sanctioned under Rule 11 when he knew or "should have known that his client's cause was without merit *when the action commenced*," *Hilton*, 899 F.2d at 45 (emphasis in original); however, Verizon has neither effectively argued nor attempted to demonstrate that Dhali knew or should have known that Williams's claims lacked merit when he first filed the complaint on April 13, 2016.

Specifically, Verizon makes only the conclusory contention that Dhali failed "to conduct [a] reasonable inquiry into the facts" (Def.'s Mem. at 3); yet, the bare allegation that "[t]his case should never have been filed" (*id.* at 13) is insufficient. Verizon has not identified any particular factual allegation in the complaint that could be considered patently baseless, nor has it offered support for the assertion that the steps Dhali took to investigate his client's factual allegations prior to the filing of the complaint were unreasonable or inadequate. To the contrary, during the hearing, defense counsel eschewed making any argument pertaining to the scope or nature of the pre-filing investigation (*see, e.g.*, Hr'g Tr. ("Your Honor, I have no idea what Plaintiff's counsel does in his intake with his clients" (statement of defense counsel))),

9

whereas Dhali's opposition makes representations that directly address his pre-filing inquiries (*see* Pl.'s Opp'n at 5 (describing Plaintiff's counsel's investigatory activities prior to commencing this action)), and nothing about his representations indicates unreasonable pre-filing conduct. Verizon cannot persuasively contend that Rule 11 sanctions are warranted based on Dhali's failure to investigate without at least undertaking to identify particular deficiencies in Dhali's pre-filing inquiry into the legal or factual basis for Williams's complaint.

To the extent that Verizon's sanction argument relies on the discovery of new facts regarding material allegations in the complaint, its unwavering focus on the evidence that Plaintiff produced during the course of the discovery process is misplaced, at least as far as Rule 11 is concerned. (*See* Def.'s Mot. at 2 (contending that the new evidence "demonstrate[s] that the claims made in the Complaint are neither grounded in fact nor warranted under the law"); *see also* Def.'s Mem. at 5 (arguing that Dhali "had the ability—through reasonable due diligence—to discover the truth simply by reviewing the documents that Williams provided to him as early as August 2016"); Def.'s Reply at 1 ("Even assuming that counsel believed that the facts set forth in the Complaint were true when [Dhali] filed it, he should have known at the time he produced the FMLA and credit records to Defendant that two critical facts alleged in the Complaint were patently false[.]").) As explained, Verizon has offered nothing to assist in the evaluation of Dhali's pre-filing efforts to investigate the truth, and the reality of Rule 11 is that a sanction is appropriate *only* when the lack of factual support is (or could have been) apparent *prior to* the filing of the deficient submission. *See Hilton*, 899 F.2d at 44; *Samuels*, 906 F.2d at 274−75. Yet, by Verizon's own

10

admission, Williams provided Dhali with the documents that purportedly rendered the complaint inaccurate approximately four months *after* Dhali had filed the April 2016 complaint (*see* Def.'s Mem. at 5 (noting that Williams provided the documents to Dhali "as early as August 2016")), and Rule 11 does not mandate that prior filings must be amended or withdrawn. *See Hilton*, 899 F.2d at 44 (explaining that Rule 11 "authorizes sanctioning an attorney only for unreasonably *filing* such a submission, not for *failing to withdraw* or *to amend* the submission when *postfiling* contingencies reveal it to be unfounded." (emphasis in original) (internal quotation marks and citation omitted)). Furthermore, Verizon has not sought the sanctions for an attorney's post-filing conduct that alternative authorities allow, *see, e.g.*, 28 U.S.C. § 1927 (authorizing courts to hold an attorney liable for the opposing party's "costs, expenses, and attorneys' fees" if that attorney "multiplies the proceedings in any case unreasonably and vexatiously"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (explaining that "in narrowly defined circumstances[,] federal courts have inherent power to assess attorney's fees against counsel" (internal quotation marks and citation omitted)), nor has it demonstrated that Dhali acted with the subjective bad faith required to justify such sanctions, *see Hilton*, 899 F.2d at 45 n.9 (explaining that, unlike Rule 11, section 1927 applies only when an attorney acts with subjective bad faith).

To be clear: while this Court finds that Rule 11 does not authorize the requested sanctions under the circumstances presented here, it does not condone Dhali's alleged conduct. Verizon asserts that, when confronted with the facts, Dhali obstinately refused to conform his complaint to his own shifting factual allegations and legal theories, and also employed a less-than-professional tone when communicating with opposing

11

counsel. (*See, e.g.*, Ex. 2 to Def.'s Reply, ECF No. 19-2.)  This Court expects that all attorneys who appear before it will treat fellow attorneys with respect, and that, as officers of the Court, each will promptly apprise the Court of subsequent developments that render prior material representations inaccurate or misleading.  *See* D.C. Rules of Professional Conduct 3.3(a)(1) (providing that a lawyer shall not knowingly "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"); LCvR 83.8(e) (providing that attorneys admitted to the Bar of this Court shall swear to conduct themselves according to "the recognized standards of ethics of our profession").  Dhali's reported failure to comport with these well-established standards of our profession is lamentable, and may well be unethical; the instant opinion holds only that the conduct is not sanctionable under Rule 11 for the reasons explained above.

## III. ORDER

Because Verizon has not demonstrated that the original complaint was patently baseless when filed or that Dhali acted unreasonably with respect to the inquiries that preceded its filing, Rule 11 sanctions are not authorized.  Accordingly, it is hereby

**ORDERED** that Defendant's sanctions-related motions—i.e., its Motion for Sanctions (ECF No. 14) and its Petition for Attorneys' Fees (ECF No. 23)—are **DENIED**.


Date:  August 31, 2017                   *Ketanji Brown Jackson*
                                          KETANJI BROWN JACKSON
                                          United States District Judge

12